## TALL TIMBER LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.*
### No. 5776.
Circuit Court of Appeals, Fifth Circuit.
April 21, 1930.

Mark Eisner and Ferdinand Tannenbaum, both of New York City, and A. L. Burford, of Shreveport, La., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C. and J. Louis Monarch and A. H. Conner, Sp. Assts. to Atty. Gen. (Frank M. Thompson, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

This is an appeal from an order of the Board of Tax Appeals, and involves an alleged deficiency in income and profits taxes

*Rehearing denied June 6, 1930.

for the year 1919, under the Revenue Act of 1918.

The appeal presents two questions: (1) Where, under facts like those of this case, tangible property has been transferred to a corporation by one not a stockholder, at a valuation less than its alleged true value, can the excess value be included in invested capital as paid in surplus? (2) In this case, has the petitioner sustained the burden of proving a greater value?

1. Section 326(a) of the Revenue Act of 1918 (40 Stat. 1092), defines invested capital as including (1) actual cash bona fide paid in for stock or shares; (2) actual cash value of tangible property, other than cash, bona fide, paid in for stock and shares, etc.; (3) paid-in or earned surplus and undivided profits not including surplus and undivided profits earned during the year. Article 837 of Regulation 45, Treasury Department, provides that, where it is shown by evidence satisfactory to the Commissioner that tangible property has been paid in by a stockholder to a corporation at a value definitely known or accurately ascertainable as of the date of such payment clearly and substantially in excess of the cash or other consideration paid by the corporation therefor, then the amount of the excess shall be deemed to be paid-in surplus. Subdivision 3, making "paid-in surplus" invested capital, is the only applicable one.

The facts pertinent are these: The petitioner was organized in 1912 by Charles L. Pack, William and W. J. Buchanan, experienced lumber and sawmill men. The River Land & Lumber Company was theretofore the owner of timberlands in Louisiana. It was a holding corporation; all the shares of stock being owned by Charles L. Pack. Pack and the Buchanans, before the incorporation of the petitioner, were negotiating a sale and purchase of the timberlands of the River Land & Lumber Company. Pack asked the Buchanans a price of $6 a thousand feet for the timber, which the Buchanans conceded to be somewhere about its worth, but were not willing to pay that amount in money. On November 1, 1912, an agreement was entered into between them, by which the timberlands were purchased for a price of $1,750,000 in money, and agreed to be conveyed to a corporation which was to be organized to take them over, and in which Pack was to have the right to subscribe for 45 per cent. of its capital stock at its par value, and in which the Buchanans were to serve as executive officers and managers, without compensation,

and the son of Pack was to be employed to learn the lumber business. The petitioner was the corporation so organized, and the lands were conveyed to it by the River Land & Lumber Company for a recited consideration of $1,750,000 on May 20, 1919; a written agreement having been executed by the vendor on December 19, 1912, and by the vendee on February 3, 1913, reciting a consideration of only $1,350,000. The consideration in money actually paid was, however, $1,750,000. The petitioner took possession of the lands shortly after November 1, 1912, the date of the verbal agreement between Pack and the Buchanans. The stipulations of the verbal and written agreements were carried out. The River Land & Lumber Company never owned any stock in the petitioner, and Pack did not own any at the date of the sale agreement. Upon November 14, 1913, 1,125 shares, being 45 per cent. of the capital stock of the petitioner, were issued to him, upon his paying for them their par value. The Commissioner determined the fair market value of the lands for purposes of depletion, as of March 1, 1913, at $2,258,693.05, of which the value ascribed to the timber was $2,197,693.60. The petitioner claims their fair market value to have been $2,400,000, based upon a price of $6 a thousand, and a quantity of 400,000,000 feet.

The first question is whether, if there was an excess, it can be classed as paid-in surplus under subdivision 3 of section 326(a) of the Revenue Act of 1918 (40 Stat. 1092), and article 837 of Regulation 45. To constitute invested capital under the designation of paid-in surplus, the Regulation requires the transfer to have been made by a stockholder. In this case the transfer of the property to the petitioner was made by the River Land & Lumber Company, which was not a stockholder in the petitioner. The transfer was caused to be made by Charles L. Pack, the sole stockholder in the River Land & Lumber Company, but, at the time of the agreement of sale and purchase, Pack was not a stockholder in the petitioner. By its terms, he was given rights to subscribe for 45 per cent. of petitioner's capital stock at par, which was issued to him in November, 1913, a year later. The agreement of sale and purchase was really between individuals, Pack as seller, and the Buchanans as buyers. The River Land & Lumber Company was merely the holder of the legal title to the lands and timber for Pack, and his agent. The petitioner was organized by all three as an instrument to carry out their trade and enable Pack to

retain an interest in the lands he was selling, by virtue of a stock ownership in petitioner and vendee when organized. In effect, Pack, by the terms of the sale agreement, became a stockholder in the petitioner at once, and in effect the River Land & Lumber Company was Pack, who owned its entire capital stock. A court of equity would have treated Pack as a stockholder in petitioner at the time of the sale, and have treated the agreement for the conveyance of the lands by the River Land & Lumber Company to petitioner as that of Pack. So treating it, it would constitute a transfer by Pack, a stockholder of petitioner, to petitioner, and the excess, if any, would be invested capital as paid-in surplus.

2. The remaining question is whether there is shown to have been an excess. The burden was on the petitioner to establish it. It relies upon evidence tending to show that the timber was worth $6 a thousand, and that there were 400,000,000 feet of it, and upon the Commissioner's determination of its value at approximately $2,200,000, afterwards by him revised. This evidence of value, arrived at by a uniform price of $6 a thousand for 400,000,000 feet, is vague. The Commissioner's determination was for a different purpose and at a different time, and was afterwards revised downward to the expressed consideration in the deed of conveyance. The existence of an excess, as of the date of payment, was not clearly and substantially shown by evidence satisfactory to the Commissioner, as required by article 837 of Regulation 45. On the other hand, the respondent relies upon the recited and actually paid money consideration of $1,750,000, Jefferson Planting Co. v. Commissioner, 31 F.(2d) 753, as indicative of actual market value. It is true that there were considerations other than the money price paid; that is, the stock subscription rights and agreement of the Buchanans to render service without pay and to employ Pack's son. It is evident the only substantial and legal additional consideration was the stock subscription privilege given Pack. If the stock was worth more than par, the petitioner lost the difference between the par value and the actual value of the stock, and the excess to that extent was not the contribution of Pack, but an addition to the consideration which the petitioner paid for the lands. This would pro tanto reduce any excess.

Giving the findings of fact of the Board of Tax Appeals the weight they are here entitled to, we do not think that the petitioner has sustained the burden of showing an excess in market value over and above the consideration paid by it for the timberlands.

The order of the Board of Tax Appeals is affirmed.